Thomas Gardner and others, next of kin to Mary Gardner, deceased, filed a bill in Chancery in Louisa County Court, against Francis Ford, alleging that he had by undue means procured a writing, purporting to be the last will of the said Mary, and bequeathing to him her whole estate; which had before been offered for probate in the County Court, and rejected, but on an appeal to the District Court of Charlottesville, admitted to record. The defendant filed an answer, averring that the will was duly executed. The depositions of nine witnesses were taken in behalf of the plaintiffs, and five for the defendant; and, altogether, clearly proved that the will was not duly executed, and that Ford was guilty of a gross fraud in preparing it, and offering it to her to be executed, when she was out of her senses.
The cause standing for hearing, an issue was directed to try the validity of the will on the law side of the County Court. A declaration was drawn, stating a wager that the paper purporting to be the will was not valid; and issue was joined upon the plea of its being valid. The verdict was “We of the Jury find that the paper called a will, &c. is not valid.” Upon a motion to the Court in behalf of the defendant, to certify that the evidence was in his favor, the Court were divided. At the succeeding term, a motion was made for a new'trial, which being refused by the Court, the defendant filed a bill of exceptions, stating as the grounds of his motion, 1st. The division of the Court above-mentioned; and, 2d. That the answer had not been read to the Jury, the counsel at the bar having said it was settled that the District Court, that it should not be read in such cases, in consequence whereof it was not offered to be read. The Court entered a decree declaring null and void the paper purporting to be the will of Mary Gardner. The defendant Ford, appealed; and, the decree of the County Court was affirmed *by the High Court o.f Chancery; from whence he appealed to this Court.
Randolph, for the appellant. X admit that the depositions in this case are against my client; but they are unimportant as to the questions which I mean to discuss.
The first point I contend for, is, that the will having been tried in the County Court, and, on an appeal to the District Court, admitted to record, the parties (if desirious of carrying the contest farther) should have appealed to this Court, instead of bringing their suit in Chancery. The County Court in Chancery could not annul a will which a Superior Court of Law had admitted to record on the same evidence as that before them. The words of the law, I admit, are ambiguous, (c) but their meaning appears to be, that, where a will has been admitted to probate, any person interested, wno had never appeared before *45 and contested it, may, within seven years, appear and file his bill in equity; but that, where the will was contested, when offered for probate, the decision should be final.
In this case the will was contested in the County Court, in the first instance, and rejected; but that decision was afterwards reversed by the District Court, and the same will admitted to record. I acknowledge that the proceedings on the probate are not a part of this record, but they ought to have been; and a certiorari for a more complete record should be awarded.
Wickham. The case of Williams executor of Young v. Strickler, (a) proves that a certiorari cannot be awarded from this Court to supply any omission in the County Court record.
Randolph. However that may be, 1 shall contend there is enough in this record to shew that such proceedings had existed. The bill expressly states that the will had been contested in the County Court, and established in the District Court. Wyld & Ambler, (b) shews that no County Court can enjoin the judgment of a District Court. It follows therefore, by analogy, that a will proved in the latter cannot be annulled in the former.
M3' second objection is that the issue did not literally comply with the law. It should have been joined on the point, whether the paper in question was the will of Mary Gardner or not; instead of which, it was, whether the will was valid or not. In this case an express law dictates particular words to be used in making up the issue, and therefore ought to be strictly followed. Issues at common *law, such as non assumpsit, nil debet, &c. being the creatures of the Courts, may be modelled by them according to their discretion ; but the express words of a law cannot. In England, in cases of this nature, the issue is devisavit vel non, and synonymous words are rejected. It may be said that to try the validity of the will, and whether the paper be the will or not is the same thing. But the great object is to avoid vague expressions, which may be misinterpreted; for Juries might understand the validity of the will to depend upon the question whether the dispositions of property made in it were reasonable in their opinions. The strictness I contend for may appear to be too great, but is the more necessary, since the verdict is final, and if a single objection is deemed sufficient by the Jury, the will is annulled; but, unless every thing concurs in its favour, it cannot be established. Besides, where real and personal estates are both conveyed by a will, (which was the case here,) a Jury might think, if it was invalid as to one, it was invalid as to the other. To prevent mistakes, therefore, as to the grounds of decision, strictness in the words of the issue was necessary.
As to the points made in the bill of exceptions, I shall not press that concern in the division of the Court; but the failure to offer the answer in evidence is important. The Court by signing the exceptions admit the fact that the answer was not read. But, this being a suit in Chancery, the answer was an important document, and ought to have been read. When an issue is directed by a Court of Equity, all the papers ought to be read to the Jury. The answer, particularly, as it may be evidence against the defendant, should be evidence for him, where it is responsive to the bill. A trial to satisfy the conscience of a Court of Equity ought to be fair, and, conducted with full discussion, and great liberality should prevail in granting new trials, (c) Even the misapprehension of counsel is a good ground in a Court of Equity for a new trial. Such was the case in this instance, and very probably the opponent counselled to the mistake by giving it as their opinion, together with that expressed by the rest of the bar, that the answer could not be read. It may be said, that, upon the merits, the evidence is against us; and that therefore these objections should be disregarded. But it does not appear that the depositions transcribed into the record were all the evidence before the Jury. They might have had verbal evidence before them, adduced on both sides, and the answer *might have been all-important to turn the scale. But at any rate, it ought to have been heard, as the Jury were to judge of it, and their verdict was to be final.
Hening, for the appellees. The first point intended to have been made by the counsel for the appellant, “that the cause could not be directed by the County Court of Eouisa on the chancery side, to be tried in the same Court on the law side,” has, with great propriety, been abandoned: for it might be shewn both from principle and practice, that this ground was untenable. A County Court, having both chancery and common law jurisdiction, may entertain a bill brought for the purpose of setting aside a will; but as the validity of a will can only be tried at law,(d) and the County Court has no power to send an issue at law to be tried before any other Court, it necessarily follows that it must-be tried at its own bar, on the law side. The High Court of Chancery may, indeed, direct an issue to be tried before any Court whatever ; because it is expressly authorised by statute, (e) But no such power is-given on the Count3r Courts; and the uniform practice has been, to direct issues to be tried in their own Court on the law side. The Court of Exchequer in England, which is analogous to our Count3r Courts, in point of jurisdiction, always sends a matter of fact from the equity side, to be tried on the law side of their own Court, (f) ’
But a new point has been made ; ! ‘that after the will had been contested, before the District Court, on the question of probate, a bill could not be brought in the County Court to tr3r its validity and the word appear in that clause of the act of Assembly, which speaks of the probate of wills, has been relied upon as favouring this position. Erom a fair exposition of this act, (g) it *46 •will be seen that the first part of the clause has relation to the probate of the will only: which is generally considered a mere matter of form, and which, from its nature, must often be an ex parte proceeding. The subsequent part of the clause expressly authorises any person interested, if he shall appear within seven ye.ars afterwards, to file his bill in equity, and contest the validity of the will. The word appear, cannot apply to proceedings as to the probate, either in the District Court or the County Court, on the law side: for how can a party appear, by a bill in equity, in a Court of Law? An unanswerable argument against the position, that the judgment of the District Court was final, is, that that Court had no power to direct *an issue to try the validity of a will before a Jury. And where evidence is complicated, and contradictory, as in this case, a Jury alone is competent to decide on its weight. As to the objection that a County Court cannot take cognisance of a will after it has been before the District Court, it is sufficient to say, that the County Court has Chancery jurisdiction, which the District Court has not, and that the law authorises it. But, to all the objections urged by the counsel for the appellant, as to the want of jurisdiction in the County Court, one answer may be given ; that the appellant himself went to trial on the issue directed, without filinar any demurrer or plea in abatement to the original bill. After this, it is too late to aver a want of jurisdiction, even if there should be a doubt on that subject, (a)
The verdict of the Jury, “that the will was not valid,” has also been considered insufficient. On this point, many authorities might be adduced, but two only are sufficient. In Trials per pais, 298, it is laid down, “that if the matter and substance of the issue be found, it is sufficient;” and in 2 Lord Raym. 860,(b) it is held, “that after verdict, the Court will admit any in-tendment to make the case good.” In the present case, it is contended, that the issue should have been in the words of the act of Assembly, “whether the writing be the will of the testator or not.” The issue was, “whether the will was valid or not;” and the Jury have expressly found that it was not valid.” Under this finding of the Jury, the Court will intend that the writing did not possess those requisites, which would make it the will of the testatrix.
But it is said, that the County Court ought to have directed a new trial of the issue, because, on the question to certify as to the weight of evidence, the Court was equally divided; and because the answer of the defendant in Chancery was not read on the trial of the issue at law. To grant a new trial of the issue was entirely at the discretion of the Court; and after a Jury, weighing the contradictory evidence in the cause, had decided against the will, the new trial was properly refused. It is denied by the appellees that any objection was made to reading the answer of the appellant, on the trial of the issue; nor does it judicially appear to this Court, that it was not read. The issue was tried at the August term, on the law side, and certified to the Court in Chancery, at the November term following; and then for the first time, an exception was improperly taken before the Court sitting in Chancery, to an opinion declared by a Court of Law, at a former term. Exceptions, to be valid, must be taken at the trial, and not after verdict ;(c) and are only proper to bring into the record some opinion of the Court, or some matter, which would not otherwise appear in it. The division of the Court did appear upon the record, and the fact of omitting to read the answer not having been stated at the trial, neither ground was sufficient to warrant a bill of exceptions at the time it was taken.
Wickham, upon the same side. Mr. Randolph’s first point is not properly before this Court, as the proceedings in the County and District Courts are not inserted in the record; but, supposing they were, the conclusion he has drawn is incorrect. The act of Assembly (d) has altered the mode of proceeding at common law relative to probates. At common law, the commencement of the probate is by a summons, which must be executed on all the parties interested, who must be before the Ecclesiastical Court before proof of the will is received. But, by this act, the County Court may admit the probate immediately, and any person interested may file a bill in Chancery, and have the validity of the will tried by a Jury, within seven years thereafter. The plain meaning of the act must be, that this may be done, notwithstanding it was contested on the probate; for which there is a very good reason; that the parties contesting might not at the time have been fully prepared with testimony, not having had notice by a summons, and the probate being allowed immediately. In this case particularly, some of the parties are feme coverts and infants, and there is no proof that they appeared in the County Court. Ford was the appellant from that Court to the District Court. His giving an appeal bond to the parties interested, does not prove that they appeared, or, if an appearance was entered in the District Court record, that is no proof that all the present parties appealed; and, if any one of them failed to appear, and contest the will on the probate, that one, by the express words of the act, had a right afterwards to bring a suit in chancery within seven years. However, if the previous contest in the County and District Courts precluded the bringing this suit, Ford ought to have pleaded that circumstance in abatement; and, as he did not, it is presumable that the records of those Courts would have shewn nothing in his favour.
It is objected that the County Court could not annul the judgment of the District Court, which admitted the will to record. But this argument applies as forcibly to the *case of a County Court in *47 Chancery annulling a will of which a probate has been had before a former County Court. In this there is no clashing of jurisdictions; as the decision is made upon different or additional evidence, and the probate is not intended by the act of Assembly to be conclusive. The case of Wyld & Ambler is against Mr. Randolph; for the question here is not to reverse or annul the judgment of the District Court, (which the County Court could not have done,) but to decide whether the will was obtained by fraud and forgery. We do not say that the District Court did wrong, but that they very properly left us to our bill in equity, which could not be received by themselves, and therefore was filed in the County Court. It may be objected that the suit ought to have been brought in the High Court of Chancery. If I considered only my own interest as a lawyer, I might be in favour of this doctrine ; but I can see no necessity for confining the suit to the High Court of Chancery; as, for the reasons already given, the authority of the County Court was not set up against that of the District Court.
All these objections, however, are, in substance, pleas to the jurisdiction, and are now too late, as they were not filed in the first instance. The motion for a certiorari is equally too late, for no such motion was made to the Chancellor; and can this Court reverse his decree, when it is evident that he did right on the record before him? The controversy concerning the words of the issue, is without foundation. There was an acquiescence in the words used on the occasion; Cor no objection was made, and, at the worst, it was only informal and, being substantial^' good, ought not to be disturbed. But, in fact, the issue was formal and good. No set form of words is prescribed in the act of Assembly, nor in England, where sometimes it is devisavit vel non, and sometimes a wager is laid, and the issue is joined on the plea of non assumpsit. The only question in such cases is, whether the Jury had the merits before them.
JUDGE TUCKER.
What evidence is there that the will was before them, and, if not, how could they have decided upon it?
Wickham. The will must have been before them, by a subpoena duces tecum; or a copy was received by consent, and at any rate, it was sufficiently identified by the bill and answer. There is no necessity for the original will's being before the Jury, unless demanded b37 the parties, *and, as no exception was taken, it is to be inferred that it was there. In this case especially, it was not wanting. The question here was not about the contents of the paper, but whether Mrs. Gardner was in her senses or not. The practice of the country is in favour of this position. The Chancellor directs the issue to be tried at the bar of any Court he pleases, and it never appears by the record whether the will was before the Jury or not, unless an exception is taken. Indeed, this Court has often sat on probates, and never had the original bill before them but in one instance. The objection concerning the division of the Court is given up. M’Call v. Graham in this Court is conclusive upon that point. The exception that the answer was not read, was not made at a proper time; and if the answer could lawfully have been read, it was his own neglect that it was not. But, I contend that the answer ought not to have been read. The only instance where an answer is to be read to the Jury, is where' an issue is directed on an equitable point, to inform the conscience of the Chancellor; not in this special mode of proceeding under the act of Assembly. Eor a man might forge a will, and afterwards, if his answer could be received as evidence, support it by his own oath. Buller’s N. P. 238, and 285, and 12 Viner, 88, shew that the answer ought not to be evidence, except where a discovery is prayed.
JUDGE TUCKER.
Does not this bill pray a discovery?
Wickham. It is in'the usual form, praying the defendant to answer, &c. but it is not a bill for discovery; because other evidence was relied upon, and not the oath of the defendant. Although in form, a discovery was required, yet, in substance, it was intended only to have the question tried under the act. But, on the merits, the answer was unimportant, and could have had no effect; being expressly contradicted by nine witnesses. The observation, that there might have been other evidence, which does not appear, has no force; because, if there was, Eord ought to have stated that fact in his exceptions; for exceptions of this sort ought to state all the evidence.
Randolph, in reply. The real subjects of inquiry in this case are, 1. Whether, after the probate in the District Court, an issue could have been directed to try the validity of the will. 2. Was the issue properly expressed? 3. Ought not the will to have been before the Jury, and was it there? And, 4. Is there not proof that the ^answer was omitted to be read, and ought not relief to be given for that omission?
1. I contend that, after the probate in the District Court, the issue ought not to have been directed. The general rule is, that the judgment of a District Court must stand, unless it be reversed by a superior tribunal. To this rule I grant that exceptions may be made by special laws: but in this case there is none.
The fact that the present appellees did appear and contest the will, is not established by positive proof, but may be fairly inferred from the record. A strong presumption arises from the circumstance that the bill does not complain of the will’s being admitted to probate in their absence. The appeal to the District Court proves that there were parties contesting before the County Court, since there cannot be an appellant without an appellee. That some of them were infants and feme coverts, is a point of no consequence; for they were represented by the rest, and their appearance binds them, unless collusion be proved ; for it would be ridiculous to permit twenty distributees one after another to bring suits to try a will. If so, and .different verdicts should be given by the Juries, would the *48 majority of those verdicts prevail? Or is a will to be established against some, and not against the rest? The objection that some of them might have been accidentally present, and only asked questions, without being prepared fully with evidence, cannot prevail: because, if that was the case, they ought to have carried it farther; and to the last decision upon it in the Court of ' Appeals, an opportunity to introduce their witnesses would have been furnished. If any one, therefore, was present, and asked a single question, he was liable for all the consequences of not carrying the contest farther. It is asked, why did we not plead this fact in the Court of Chancery? I answer, because the contestation was apparent in the bill itself. If it was not sufficiently evident, the Chancellor ought to have caused all proofs for satisfying his conscience to be brought forth; and, as no such measures were taken, the maxim, quod stabitur praesumptioni donee pro-betur in contrarium, applies.
As to the law arising on that fact; — the obvious interpretation of the act of Assembly supposes non-appearance and non-con-testation. Its words are, “if, however, any person interested shall within seven years afterwards appear,” &c. Here the word however is synonymous *with notwithstanding-, and means something contrary to what had been before done; implying that, if any person who had not appeared at the probate, shall within seven years afterwards appear, &c. Reason and justice are in favour of this construction ; because, in cases where the parties have appeared at the time when the will is offered for probate, the suit in Chancery is unnecessary, the whole subject of law and evidence being open upon the appeal; the Court examining witnesses, and deciding upon the merits of the question. If the merits were not before the District Court in this case, they might and ought to have been. Besides, why should twenty chances ot annulling the will be given to those opposed to it, and only one of supporting it to the other party? According to that doctrine, even if the contest had been carried up to the Court of Appeals, a suit in Chancery might afterwards have been brought.
Mr. Wickham has mistaken the practice in the Ecclesiastical Courts. The practice of filing a caveat to prevent letters of administration from being improvidently issued proves that, otherwise, the parties would be bound by the first examination. But the doctrine on that subject has no application to the present question. Our new law, passed in 1785, and transcribed in 1792, was not intended to guard (as they do in the Ecclesiastical Courts) against precipitate proof, by requiring parties to be summoned before they should be bound by the probate. The act of 1748, c. 3, s. 4, directed the heir to be summoned where the lands or any part thereof were devised away from him; but did not require the distributees in any case to be summoned. An appeal was their only remedy, except in.cases of disability by infancy, &c. in which an application to the Court was allowed within ten years after the disability removed; and yet, under that law, no injustice was ever complained of. The suit in Chancery to try the will was introduced by the act of 1785, to give relief upon principles of equity only; namely, where the complainants were undefended, having not appeared and contested. But it is objected that the decision of the District Court ought to have been pleaded in abatement or bar. I ask, is this a regular suit in Chancery, or not? If it is. not a regular suit, but only so in form, for the purpose of having the issue directed to try the will, then the law of abatement does not apply. If it is a regular suit, the bar is apparent from the bill itself;
the Court could *have no jurisdiction but by virtue of the act of Assembly, and, that failing, to bestow it, their jurisdiction failed. The rule is that, where in any shape it appears that the Court had no. jurisdiction, it is immaterial whether it be pleaded or not.
2. The issue and verdict thereupon were improper for the reasons I have assigned before. Besides, the bill does not pray an issue to be awarded, and the prayer for general relief is not sufficient. Our acquiescence, by joining in the issue after-wards illegally tendered, cannot preclude us from contesting it now; because Eord was compelled to accept it, in submission to the authorit3r of the Court.
3. The will was not before the Jury; because, having been recorded in the District Court, it could not have been before them, but by a subpoena duces tecum ; which is not to be presumed, as it does not appear in the record. It is indeed very questionable whether the clerk of the County Court was authorised to issue such a writ to the clerk of the District Court, the latter being an officer of a superior Court. It is said, however, that the presence of the will was-not necessary. But, since the Jury were to judge of its validity in every respect, as well 'whether it was attested by the legal number of witnesses, or the signature was genuine, as whether it was fraudulently obtained, they could not have done so without having it before them. The Court also, without inspecting it, could not have been enabled to decide properly the motion for a new trial. And how can this Court determine whether they did right or wrong? But it is pretended that the parties dispensed with it. I deny that this was done by Eord. The Gardners indeed, who sought to destroy it, ought to have caused it to be produced, and should have set it forth, as an exhibit annexed to their bill.
4. The omission to read the answer was a sufficient ground for a new trial. Our opponents object, 1. That the fact of the omission is not proved; 2. That, if it had been read, it could not have availed; and, 3. That, if it was omitted, it was through the fault of the counsel of Eord himself. To the first objection, I answer, that the bill of exceptions states the fact of omission, and must be taken as a certificate from the Court themselves of its truth — 1 Salk. 288, which has been cited to shew that exceptions, to be valid, must be taken at the trial, speaks only of a regular bill of exceptions, after the cause has been decided, not while the suit is still depending.
*49 * JUDGE LYONS.
How cottld the Court, to whom the motion for a new trial was made, know the fact of the omission at the former Court?
Randolph. The Judges in the County Court, in chancery and at common law, are the same persons; and, if the Court, on the chancery side, undertook to assert this from their own knowledge, who can controul it? But, admit that this is not a true bill of exceptions; it, nevertheless, contains matter, especially when backed by the circumstance of the Court’s being divided on the weight of evidence, which ought to be noticed on a motion for a new trial in a Court of Equity, where mere affidavits are often considered as sufficient.
2. If the answer had been read, it might have availed; because it is the general rule in equity, that it shall be read, and why did the law direct the suit to be brought in Chancery, if Chancery rules are not to prevail? Every reason is in favour of this, because, after attempting to obtain a discovery from the defendant’s oath, the plaintiff ought to abide by it. His being charged with forgery is immaterial; for, if he was guilty of that crime, prosecute him at common law; but, when you bring him into Chancery, let his answer be read: and the charge in this case, as in others, ought not to be presumed until proved. The issue was founded on the bill, answer and depositions. Buller’s N. P. 238, shews that the depositions could not have been read, without first reading the bill and answer. By what right, then, did they read the depositions? The answer is, because written evidence is admitted in Chancery. If, Iherefore, the rules of Chancery prevailed in part, why not in toto? Besides, the final hearing in such cases is upon the bill, answer and exhibits. Is it not absurd to introduce the answer on the final hearing, when it can have no effect, after the verdict has decided the question, and not admit it in the first instance, although it might then be of use, and was a part of the record? 12 Viner, 88, and Buller, 237, do not apply to this case. The necessity of reading the answer is farther evident from this consideration, that the evidence of the place where the will was signed was introduced against it. The answer might have removed that difficulty. There was, moreover, conflicting testimony, and you cannot select a particular point and cail it fatal. The will would have been good as to personal property, without much solemnity; and the answer implies its perfect execution ; so, at least, the Jury might have understood it. In addition to all this, when *the character of a man, who has hitherto supported a good reputation, is in question, surely, his answer should be admitted to be read in his vindication, to have such credits as the Jury may think it deserves.
3. Pickett v. Morris, (a) proves, that an omission by the counsel on one side, when occasioned by a misrepresentation made by the counsel on the other side, is a ground for a new trial.
Tuesday, November 4. The President delivered the opinion of the Court, (present,. Judges Lyons, Carrington and Tucker,) that the decree of the High Court of Chancery should be affirmed; and observed that, for the information of the bar, he would state the principles upon which that opinion was founded.
Having stated the case, he proceeded as follows: — ■
It does not appear what evidence was given to the Jury, and, as no exception was filed at the trial, all must be presumed to have been legal and right.
In the exceptions, which were filed at a subsequent term, no proof of what is said to have passed between the counsel at the bar is stated, but it appears to have been merely a suggestion of the counsel who drew the exceptions. The court, therefore, did not, and could not err, in refusing the new trial, when the answer had not been offered to be read. As no direction from the Court sitting in Chancery had been given, respecting the reading of the depositions or any of the papers filed in the cause, the omission to read any of those documents was unimportant, if, in fact, there was such an omission.
The original will might have been produced at the trial; and, as no exception for the want of it was taken, must now be presumed to have been before the Jury.
The heirs and distributees are not summoned, under our act of Assembly, to contest a will when it is offered for probate. The persons interested, in this instance, therefore, not being summoned, knew not when the will would be exhibited to the Court, and the probate could not be binding upon them. Some of them might have been by accident in Court, and contested the will, but that could not bind others who were infants, &c., nor is the probate binding or conclusive on any of them, who might be strangers then to the fraud, and have discovered it afterwards. The true construction of the act of Assembly is, that, if the fraud be discovered within seven years after the probate, any person interested may, by bill in Chancery, contest its validity upon an issue to be made up, ^'whether the writing produced be the will of the testator or not. Validity means certainty; and certainty truth; so that the issue was, whether the paper in question was the true w ill or not.
. ! . . ' . The County Court in Chancery had a right to direct a trial of such an issue, as well as the High Court of Chancery, arid the Judge of the last mentioned Court, although tenacious of his jurisdiction, was of this opinion ; or he would not have affirmed the decree.
1 1 ■ ' ' ' The case of a deed’s being proved in the General Court is analogous to the present. A County Court is not thereby precluded from inquiring in Chancery into any fraud committed in obtaining such deed, and from setting it aside: nor, although a will has been proved in a Superior Court can the County Court in Chancery be prevented from annulling it for fraud.
The Court therefore is of opinion that the decree be affirmed.

 Bev. Code, yol. 1, c. 92, sect. XI, p. 161.

 3 Call. 230.

 2 Wash. 36 — 12.

 See 2 Wash. 255 — 272, &c. in the case of Pickett v. Morris.

 2 Atk. 438 [424, ] Webb v. Claverden.

 Rev. Code, vol. 1, c. 64, sect. 13, p. 64.

 Imp. Pract. K. B. 487.

 Rev. Code, vol. 1, c. 92, p. 161, sect. 11.

 See Rev. Code, vol. 1, c. 67, sect. 56, p. 91. Also c. 64, sect. 29, p. 66, same law.

Tonkin v. Croker.

 Buller’s N. P. 315, and 1 Salk. 288, wright v. Sharp.

 Rev. Code, vol. 1, c. 92, sect. 11, p. 161, and sect. 12, p. 162.

 2 wash. 255.